(C. D. 1559)

BATTAT IMPORT-EXPORT CO., INC. *v.* UNITED STATES

## United States Customs Court, Second Division

(Decided November 19, 1953)

*Lawrence, Tuttle & Harper* (*Frank L. Lawrence* of counsel) for the plaintiff.

*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh* and *Richard M. Kozinn*, special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; LAWRENCE, J., not participating

FORD, Judge: The question presented by these two suits against the United States is primarily the rate of duty applied to the merchandise by the collector rather than the classification thereof. The collector classified the merchandise as "Cotton Articles, embroidered," and levied duty thereon at the rate of 90 per centum ad valorem under the provisions of paragraph 1529 (a) of the Tariff Act of 1930. The plaintiff claims that:

Duty was assessed at rates prescribed by presidential proclamation 2908, 3 CFR supp. p. 63, T. D. 52587, October 12, 1950. This was illegal because contrary to section 350, 19 USC 1951, authorizing import restrictions which "shall be effective from and after such time as is specified in the proclamation." In this instance the date of effect was December 12, 1950. Therefore the involved merchandise should have been assessed at rates prevailing prior to said proclamation, or at rates at which it was entered.

It thus appears that the essential question to be decided is the effective date of the termination of the trade agreement with China contained in Presidential Proclamation No. 2908, *supra*. If the terms of the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, were in effect with respect to China on the date the involved merchandise was withdrawn from warehouse for consumption, it would appear that the involved merchandise was subject to the lower rate of duty claimed by plaintiff. However, if said trade agreement was not in effect on the date of withdrawal of the involved merchandise, it would appear that the rate of duty levied by the collector was correct, and the claim of the plaintiff should be overruled.

These two suits have been submitted for decision upon the following stipulation:

1) The merchandise herein was exported from China and was entered for warehouse at the port of San Francisco in November 1950 at the rate of 70 percent ad valorem under paragraph 1529, Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade, T. D. 51802. On December 11, 1950, in each of the two entries herein involved, a withdrawal entry was filed by plaintiff, and delivery permits were thereupon issued by the collector of customs. At time of withdrawal, duty was exacted at the rate of 90 percent ad valorem and the entries were subsequently liquidated at that rate under said paragraph 1529 as provided by presidential proclamation 2908, T. D. 52587.

2) The reports of the collector, together with the invoices and entry papers and all other official documents which were transmitted by him to this court, in-

cluding a letter of February 6, 1951, addressed to him by the Commissioner of Customs, may be admitted in evidence herein and on this stipulation these cases may be deemed to be submitted, * * *.

The letter from the Commissioner of Customs to the collector of customs at San Francisco, referred to in the above stipulation, is as follows:

Reference is made to your letter of October 22, 1951 (LJO'R:MLC), transmitting a petition from Lawrence, Tuttle and Harper, attorneys at law, requesting the Bureau to review its finding that the President's Proclamation No. 2908 of October 12, 1950, published in T. D. 52587, becomes effective on and after December 11, 1950, as to certain products entered or withdrawn from warehouse for consumption. The petition relates to warehouse entries No. 749 of November 2, 1950, and No. 770 of November 6, 1950. The entries have been liquidated and timely protests have been filed in connection therewith.

The petitioners have contended in effect that the effective date of the President's proclamation is not in accordance with the provisions of section 350, Tariff Act of 1930, as amended, which provides that the proclaimed duties and import restrictions shall be in effect *from* and *after* such time as is specified in the proclamation.

An examination of the effective date specified in the President's proclamation No. 2908 of October 12, 1950, reveals that it is unambiguous in that he clearly indicated its provisions were to become effective on and after December 11, 1950. As this Bureau acts under the direction of the proclamation and has no authority under section 350, no change in the instructions contained in T. D. 52587 appear to be warranted.

In view of the foregoing, you shall transmit the instant protests to the United States Customs Court. Your file is returned.

The pertinent part of section 350 (a) of the Tariff Act of 1930, as amended, is as follows:

(2) To proclaim such modifications of existing duties and other import restrictions, or such additional import restrictions * * * of existing customs or excise treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder. * * * *Provided*, That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation. *The President may at any time terminate any such proclamation in whole or part.* [Italics ours.]

Proclamation No. 2908 of October 12, 1950, so far as here pertinent, is as follows:

3. WHEREAS, the Secretary General of the United Nations has informed the Secretary of State that on March 6, 1950, he was notified that it was the decision of the Government of the Republic of China, which was then a contracting party to the said General Agreement, to withdraw from the General Agreement on Tariffs and Trade, in accordance with paragraph 5 of the Protocol of Provisional Application of the General Agreement and the Government of China is therefore no longer such a contracting party.

\*         \*         \*         \*         \*         \*         \*

Now, THEREFORE, I, HARRY S. TRUMAN, President of the United States of America, acting under and by virtue of the authority vested in me by the Constitution and the statutes, including the said section 350 of the Tariff Act of 1930, as amended, do proclaim as follows:

PART I

The said proclamation of December 16, 1947, as amended and rectified, and the said proclamations supplemental thereto referred to in the second recital of this proclamation are hereby terminated to the extent that, on and after the sixtieth day following the date of this proclamation they shall be applied as though the items and parts of items identified in the sixth recital of this proclamation were deleted from Part I of Schedule XX of the said General Agreement, * * *.

Since the involved merchandise was entered for warehouse, we quote the following from section 557 (a) of the Tariff Act of 1930, as amended:

(a) Any merchandise subject to duty * * * may be entered for warehousing and be deposited in a bonded warehouse at the expense and risk of the owner, importer, or consignee. Such merchandise may be withdrawn, at any time within three years from the date of importation, for consumption upon payment of the duties and charges accruing thereon at the rate of duty imposed by law upon such merchandise at the date of withdrawal.

It is the contention of the plaintiff herein that there is a distinction between the phrases "from and after" and "on and after," the former being used in the statute amending section 350 of the Tariff Act of 1930, and the latter being used in the Presidential proclamation terminating the trade agreement with China; that if the President had employed the phrase "from and after" the 60th day following the date of his proclamation terminating the trade agreement with China, the said trade agreement with China would have been in effect on and during December 11, 1950, and since the involved merchandise was withdrawn from warehouse for consumption on December 11, 1950, it was entitled to the benefits of the lower rate under said trade agreement with China.

In its brief filed herein, counsel for the plaintiff contends specifically that:

Accordingly, the proclamation being subordinate to the statute, it will be contended is invalid to the extent that they conflict in regard to time of effect. Specifically, the withdrawal date, December 11, being "such time as is specified in the proclamation," the proclaimed restriction could become effective only "from and after" that date; therefore as the goods herein were withdrawn one day before that effective period began, they continued to be subject to the lower rate of 70 percent ad valorem.

Counsel for the defendant contends that:

* * * While it may be considered that the General Agreement on Tariffs and Trade was modified by the termination of their rights to one of its former members (China), it does not necessarily follow that the act of the President was merely a modification of a proclamation. It was a modification to the General Agreement on Tariffs and Trade only, which was brought about by the President's termination of benefits to the Republic of China. Hence, the President acted under the

power granted to him to terminate trade agreements and not under the power to modify them. [Parentheses not quoted.]

It appears from a reading of the President's said proclamation 2908 that no suggestion is contained therein that the President had any thought or intention of suspending the trade agreement with China because of China's discriminatory treatment of American commerce or because of other acts or policies which, in his opinion, would tend to defeat the purposes set forth in section 350 of the Tariff Act of 1930, as amended, or for any other reason. The language employed in said proclamation is clear and unequivocal and manifests an intent on the part of the President to terminate the trade agreement with China.

The President was careful to explain that his reason for terminating the said trade agreement was because "* * * the Secretary General of the United Nations has informed the Secretary of State that on March 6, 1950, he was notified that it was the decision of the Government of the Republic of China, which was then a contracting party to the said General Agreement, to withdraw from the General Agreement on Tariffs and Trade, in accordance with paragraph 5 of the Protocol of Provisional Application of the General Agreement * * *." Based upon the foregoing, the President found and determined that "* * * the Government of China is therefore no longer such a contracting party."

Under section 350 of the Tariff Act of 1930, as amended, the President is authorized and empowered to do three things, to wit: (1) Proclaim modifications of existing duties and other import restrictions; (2) suspend the application to articles the growth, produce, or manufacture of any country; and (3) "* * * at any time terminate any such proclamation in whole or in part."

In proclaiming such modifications of existing duties and other import restrictions, the President must first find that such modifications are required or appropriate to carry out any foreign trade agreement which he has entered into under section 350 of the Tariff Act of 1930, as amended. His act suspending a foreign trade agreement must be based upon "* * * discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; * * *." However, when the Congress authorized the President to terminate trade agreements, it did so without restraint or restrictions of any kind by use of the clear and definite language "The President may at any time terminate any such proclamation in whole or in part."

In its brief filed herein, counsel for plaintiff concedes that the said proclamation formally terminated previous proclamations "to the extent that, *on and after* the sixtieth day following the date of this proclamation they shall be applied as though the items and parts of

items identified in the sixth recital of this proclamation were deleted from Part I of Schedule XX of the said General Agreement." It is contended, however, that "Although this is called a termination it is nevertheless in effect a 'modification of existing duties,' to wit, deletion of the reduced rates in the Geneva agreement and a return to the higher rates of the 1930 tariff."

With the above contention, we are unable to agree. In language that is susceptible of only one interpretation, and acting well within his authority, the President decreed that:

The said proclamation of December 16, 1947, as amended and rectified, and the said proclamations supplemental thereto referred to in the second recital of this proclamation are hereby *terminated* * * *. [Italics ours.]

There is nothing in the language employed by the President in terminating the trade agreement with China which suggests that he intended to only modify or suspend the agreement with China. The limitation as to the time when the proclaimed duties and other import restrictions shall be in effect, refers to and deals only with such proclaimed duties and import restrictions as are brought about by the President suspending the application of any trade agreement to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which, in his opinion, tend to defeat the purposes set forth in section 350 of the Tariff Act of 1930, as amended. "The President may at any time terminate any such proclamation in whole or in part," without any restriction as to whether or not the effective date of such termination is "on and after" or "from and after," or otherwise.

An examination of the President's Proclamation No. 2908, dated October 12, 1950, terminating the trade agreement with China, reveals no ambiguity. It clearly states that its provisions were to become effective on and after the 60th day from October 12, 1950. By actual count, the 60th day on and after October 12, 1950, was December 11, 1950. It is apparent, therefore, that during the entire day of December 11, 1950, and thereafter, the trade agreement with China was not in effect. Counsel for the plaintiff has agreed that:

* * * On December 11, 1950, in each of the two entries herein involved, a withdrawal entry was filed by plaintiff, and delivery permits were thereupon issued by the collector of customs.

Since withdrawal entries were not filed and delivery permits issued, covering the involved merchandise, until December 11, 1950, a date on which the trade agreement with China was no longer in effect, the involved merchandise could not have been covered by and subject to the provisions of a trade agreement no longer in effect. It was, therefore, covered by the provisions of paragraph 1529 (a) of the Tariff Act

of 1930 and subject to duty at the rate of 90 per centum ad valorem, as levied by the collector.

All claims of the plaintiff are, therefore, overruled. Judgment will be rendered accordingly.